UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| GOLDEN BRIDGE LLC d/b/a GOLDEN BRIDGE FUNDING LLC, Plaintiff, – against – 150-30 AVE REALTY LLC and ANDY WEIHAN HO, Defendants. | | **REPORT AND RECOMMENDATION** 23-cv-9045 (NCM) (PK) |

**Peggy Kuo, United States Magistrate Judge:**

Plaintiff Golden Bridge LLC d/b/a Golden Bridge Funding LLC ("Golden Bridge") brought this action against Defendants 150-30 Ave Realty LLC ("Borrower") and Andy Weihan Ho ("Guarantor") seeking foreclosure on the property located at 150-30 12th Avenue, Whitestone, NY 11357 (the "Property"). (Compl., Dkt. 1.) Before the Court on referral from the Honorable Natasha C. Merle is Plaintiff's Motion for Final Judgment of Foreclosure (the "Motion," Dkt. 39). For the reasons stated herein, the undersigned respectfully recommends that the Motion be granted, except as noted below.

## BACKGROUND

On May 30, 2025, the Court granted Plaintiff's motion for summary judgment for foreclosure of the Property and judgment against Guarantor, as well as Plaintiff's request to appoint a referee to compute the amounts owed as a result of the foreclosure. (Summ. J. Order ("SJ Order") at 17, Dkt. 32.) On July 8, 2025, the Court confirmed Anthony Vaughn as the Referee.

The Motion, as supplemented,[1] requests:

(1) That the Referee's Report, dated September 15, 2025 (Dkt. 39-7) be confirmed, with additional interest calculated from May 31, 2025 in the *per diem* amount of $1,533.33 through the date of entry of judgment;

(2) That the Amended Proposed Order and Final Judgment of Foreclosure and Sale (Dkt. 43-1) be entered;

(3) That Plaintiff be awarded $97,158.26 in attorneys' fees, which includes "estimated legal fees and expenses of $8,000" not yet incurred; and

(4) That Plaintiff be awarded costs of $909.25.

(*See* Decl. of Regularity ¶ 44, Dkt. 40.) No opposition to the Motion was filed.

**I. Confirmation of the Referee's Report**

The Referee's Report calculates a total amount of $3,344,200 based on following: $2,300,000 as the unpaid principal balance, $929,200 in default interest, and $115,000 in late charges. (Dkt. 39-7 at 5.)[2]

After a court grants summary judgment in favor of the plaintiff in a foreclosure action, "the trial court has the authority to compute the amount owed or appoint a referee to do the same." *U.S. Bank Tr. Co. v. Jericho Plaza Portfolio LLC*, No. 24-CV-917 (PAE) (RFT), 2026 WL 476134, at *5 (S.D.N.Y. Jan. 30, 2026), *report and recommendation adopted*, 2026 WL 475059 (Feb. 1, 2026) (citing *U.S. Bank Tr. v. Dingman*, No. 16-CV-1384 (CS), 2016 WL 6902480, at *3–4 (S.D.N.Y. Nov. 22, 2016)); *see also* R.P.A.P.L. § 1321 (McKinney 2026). "A district court should confirm a referee's report where its findings are 'substantially supported' by the record." *1077 Madison St., LLC v. March*, No. 14-CV-4253 (JMA) (PK), 2017 WL 6383839, at *2 (E.D.N.Y. Mar. 29, 2017) (citing *Kaplan v. Einy*, 618 N.Y.S.2d 777, 780 (App. Div. 1994)). "Generally, New York courts will look with favor upon a Referee's report,

---

[1] (*See* July 20, 2026 Suppl. Decl., Dkt. 42; Aug. 3, 2026 Suppl. Decl., Dkt. 43; Aug. 10, 2026 Suppl. Decl., Dkt. 45.)

[2] All references are to ECF paginations.

inasmuch as the Referee, as trier of fact, is considered to be in the best position to determine the issues presented." *Id.* (citing *Namer v. 152-54 56 W. 15th St. Realty Corp.*, 485 N.Y.S.2d 1013 (App. Div. 1985)). "A referee's report may be based solely on documentary evidence and sworn affidavits." *Id.* (citing *RCB Equities No. 3, LLC v. Skyline Woods Realty, LLC*, No. 10-CV-1182, 2013 WL 935785, at *2 (N.D.N.Y. Mar. 11, 2013)).

"An evidentiary hearing on the amount owed is not required, so long as there is a basis for the damages awarded, detailed affidavits, and other documentary evidence can provide this basis." *Jericho Plaza*, 2026 WL 476134, at *5 (citation modified). "The amount owed should be determined based on the terms of the Notes and Mortgages." *Id.*

### *A. Unpaid Principal Balance*

The principal amount of the loan originally was $2,400,000, which the Borrower was required to pay by October 1, 2021. (*See* Consolidation, Extension, and Modification Agreement ("CEMA") at 4, Dkt. 1-3; Note at 3, Dkt. 1-2.) The Modification Agreement (Dkt. 1-5) and Extension Agreement (Dkt. 1-6) extended the due date to October 2, 2023. The Referee's Report properly concluded that there was an unpaid principal balance of $2,300,000, as supported by a Borrower Statement of Account dated April 25, 2024, showing a principal balance of $2,300,000 on June 6, 2023, which remains unpaid. (*See* Referee's Report at 13, 73–74.)

### *B. Default Interest*

Pursuant to the Note, in the event of a default, the Borrower is obligated to pay interest at a rate of 24% per annum, with the annum consisting of 360 days. (§ 3.) The Borrower defaulted on its payment obligations by failing to make the required payment by October 2, 2023. (*See* SJ Order at 3, 8.)

The Referee's Report calculates default interest from October 3, 2023 to May 30, 2025, finding that $929,200 in default interest is due for those 606 days based on a per annum rate of 24%. (Referee's Report at 5; Note § 3.) This calculation is correct.

Section Three of the Note permits interest to accrue until the loan amount is fully repaid. I respectfully recommend that from May 31, 2025 until the date of entry of judgment, interest at a *per diem* rate of $1,533.33 ($2,300,000 x 0.24/360) be added to the default interest amount.

### *C. Late Fees*

The Referee's Report calculates $115,000 in late charges. (Referee's Report at 5; July 20, 2026 Suppl. Decl. ¶ 4.) Section Three of the Note imposes "a late charge of five percent (5%) for each $1.00 of such payment." Five percent of the unpaid balance of $2,300,000 is $115,000.

Accordingly, I respectfully recommend that the Court confirm the Referee's Report in the total amount of $3,344,200 plus an additional *per diem* amount of $1,533.33 from May 31, 2025 until the date of the entry of judgment.

## II. Attorneys' Fees and Costs

Plaintiff requests $89,658.26 in attorneys' fees for 204.1 hours of work by lawyers and paralegals at Zeichner Ellman & Krause LLP, costs of $909.25, and "anticipated" legal fees and disbursements of $7,500 and $500, respectively. (Decl. of Regularity ¶¶ 32, 40, 44.)

### *A. Attorneys' Fees*

The Consolidated Mortgage entitles Plaintiff to an award for its costs and expenses in enforcing the Note and in connection with a default, including attorneys' fees. (Ex. C to Compl. ¶ 42, Dkt. 1-3.)

The lodestar or "the product of a reasonable hourly rate and the reasonable number of hours required by the case" creates a "presumptively reasonable fee." *See Millea v. Metro-N. R.R. Co.*, 658

F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008) and *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)).

**1. Reasonable Hourly Rates**

"According to the forum rule, the reasonable rate used to determine the amount of attorney's fees to award is calculated according to the prevailing rates in the district in which the court sits." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 173 (2d Cir. 2009) (citation modified). "The prevailing rates for experienced attorneys in the Eastern District of New York cases range from approximately $100 to $450, depending on experience level." *Wells Fargo Bank Nat'l Ass'n v. 366 Realty LLC*, No. 17-CV-3570 (KAM) (JAM), 2026 WL 1740295, at *8 (E.D.N.Y. June 17, 2026) (internal citations omitted); *see also Kimba Indus. Inc. v. Fortegra Specialty Ins. Co.*, No. 24-CV-1334 (JMW), 2026 WL 618037, at *6 (E.D.N.Y. Mar. 5, 2026) (concluding that after adjusting for inflation and market conditions, updated forum rates in the Eastern District are $450 to $650 for partners, $300 to $450 for senior associates, $150 to $300 for junior associates, and $100 to $150 for paralegals). "Moreover, attorneys' fees awarded in the Eastern District of New York for cases concerning mortgages and promissory notes have tended to be lower than in other cases." *366 Realty LLC*, 2026 WL 1740295, at *8 (internal citations omitted).

In the Motion, Plaintiff provides biographical information for two of its main attorneys. (Decl. of Regularity ¶¶ 38–39.) Steven Rand, Esq. has 35 years of legal experience and specializes in "commercial litigation for banks and financial institutions," including commercial foreclosures. (*Id.* ¶ 38.) Mr. Rand's standard hourly rate was $1,050 and has been reduced to $450 in the Motion. (*Id.* ¶ 35; July 20, 2026 Suppl. Decl. ¶ 13.) Daniel Park, Esq. has over 10 years of experience as a commercial litigator, including "commercial foreclosure litigation, asset recovery litigation, and other complex commercial disputes." (Decl. of Regularity ¶ 39.) Mr. Park's standard hourly rate is $850 and has

been reduced to $350 in the Motion. (*Id.* ¶ 35; July 20, 2026 Suppl. Decl. ¶ 13.) Given Mr. Rand's and Mr. Park's experience, I find that their requested hourly rates are reasonable.

In an additional declaration, Plaintiff provides biographical information for its remaining billers. (*See* Aug. 3, 2026 Suppl. Decl. ¶¶ 7–10.) Michael Antonivich is a senior managing clerk and paralegal with over 35 years of experience and charges an hourly rate of $250. (*Id.* ¶ 9.) Anthony Rosario is an assistant managing clerk and paralegal with over 25 years of experience and charges an hourly rate of $250. (*Id.* ¶ 10.) Together, Mr. Antonivich and Mr. Rosario "performed 10.5 hours of service." (July 20, 2026 Suppl. Decl.) Because an hourly rate of $250 is higher than what is typically awarded for paralegals in this district, *see Kimba Indus. Inc.*, 2026 WL 618037, at *6, I respectfully recommend that the hourly rates Mr. Antonivich and Mr. Rosario be reduced to $150.

Mark Schlussel, Esq. is a senior partner with over 45 years of experience and has expertise in bank financing, bank litigation, real estate, and foreclosures. (Aug. 3, 2026 Suppl. Decl. ¶ 7.) His hourly rate is $995. (*Id.* ¶ 6.) Ethan Schlussel, Esq. is a partner with about 10 years of experience and has expertise in banking and finance matters. (*Id.* ¶¶ 6, 8.) His hourly rate is $732.60. (*Id.* ¶ 6.) Given the prevailing rates in this district for partners in these matters, I find that the hour rates for Mark Schlussel and Ethan Schlussel are unreasonably high and recommend that they be reduced to $450.

**2. <u>Reasonable Hours</u>**

"To determine whether the number of hours spent by Plaintiff's counsel was reasonable, the Court must use its experience with the case, as well as its experience with the practice of law, to assess the reasonableness of the hours spent in a given case." *Litkofsky v. P & L Acquisitions, LLC*, No. 15-CV-5429 (DRH) (AKT), 2016 WL 7167955, at *10 (E.D.N.Y. Aug. 19, 2016), *report and recommendation adopted*, 2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016) (internal citations omitted).

Plaintiff submitted contemporaneous time sheets showing a total of 204.1 hours of work performed by various lawyers and paralegals from September 11, 2023 to September 12, 2025. (*See* Invoices, Dkt. 39-9.)

I find several problems with the Invoices. Several time entries refer to legal work unrelated to this case. For example, a time entry on May 20, 2025 bills .20 hours for "Telephone conference with opposing counsel regarding time to Answer complaint" (*id.* at 56), but Defendants already filed an Answer on March 21, 2024. (*See* Dkt. 17.) An entry on June 3, 2025 bills 1.10 hours to "Consider strategy in connection with answers and counterclaims filed by defendant Kwok" (Invoices at 58), but Kwok is not a defendant in this case. Likewise, on August 1, 2025, 1 hour is billed to "Review Defendant Kwok motion for declaratory judgment," and several subsequent entries cover work on filings apparently related to such motion. (*Id.* at 65.) Furthermore, an entry on August 29, 2025 bills .10 hours to "Review order assigning new Magistrate" when no such order exists and no new Magistrate Judge was assigned. (*Id.* at 66.) An entry on September 2, 2025 bills .30 hours to a "Telephone conference with R. Frommer regarding his potential motion for summary judgment" (*id.* at 68), although summary judgment was already resolved. On September 8, 2025, .40 hours was billed to "Correspondence with Judge Pollak's law clerk regarding potential hearing" (*id.*) when Judge Pollak was never assigned to this case.

In response to the Court's inquiry about these time entries, Plaintiff stated that "[w]hile these entries are not related to this matter, they were validly billed to the client" because there is another federal case, *Golden Bridge R2 LLC v. Sunrise Plaza LLC, et al.*, No. 24-CV-236 (NRM) (PCG) and a state court action, both involving Borrower and Guarantor. (Aug. 10, 2026 Suppl. Decl. ¶ 4.)

The Invoices all identify the client as "Golden Bridge R2 LLC" and the matter as "Sunrise Plaza LLC and 150-30 12 Ave Realty LLC," without differentiating among the work done on the two federal court cases or state court action.

Section 42 of the Consolidated Mortgage states, "If it becomes necessary to employ counsel to collect the obligation described herein or to protect or foreclose said mortgage, the Mortgagor hereby agrees to pay reasonable attorneys' fees for the services of such counsel together with all other costs and disbursements in connection therewith whether or not suit be brought." By its plain language, this clause provides for the recovery of fees incurred to protect or foreclose solely the mortgage in this case, and no other. While a client and its counsel may reach an agreement on how the client will be billed, the Court may only award fees here in accordance with the terms of the Consolidated Mortgage and Note, which are limited to this foreclosure action.

In addition, there are other billing deficiencies. For example, on May 2, 2024, Mr. Park billed 2.4 hours to attend the initial conference (Invoices at 28), but the initial conference only lasted 12 minutes. Mr. Park states that part of this billing entry includes travel time. (*See* Aug. 3, 2026 Suppl. Decl. ¶ 12.) Travel time should be calculated using half of the regular rate. *See Pennacchio v.* Powers, No. 05-CV-986 (RRM) (RML), 2011 WL 2945825, at *1 (E.D.N.Y. July 21, 2011) (noting that "it is customary in this circuit to reduce attorney's fees by fifty percent for travel time") (citing *Granite Music Corp. v. Ctr. St. Smoke House, Inc.*, No. 09-CV-872A, 2011 WL 1898909, at * 18 (W.D.N.Y. May 19, 2011) and *Lochren v. County of Suffolk*, No. 01-CV-3925 (ARL), 2010 WL 1207418, at *4 (E.D.N.Y. Mar. 23, 2010)).

When there are multiple billing problems, and especially when there is insufficient information for the Court to properly determine which fees were validly incurred, the Court may make an across-the-board reduction in the award. *See 366 Realty LLC*, 2026 WL 1740295, at *8 ("Across-the-board percentage cuts are appropriate for excessive or otherwise improper billing rather than scrutinizing the propriety of each individual time entry.") (citing *Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010)) (citation modified); *see also H.C. v. Dep't of Educ.*, 71 F.4th 120, 126 (2d Cir. 2023) (upholding a twenty percent reduction of attorneys' fees). Given the excessive billing rates for some

of Plaintiff's counsel, the undifferentiated and improper inclusion of billing for other matters, and other improper billing, such as for travel time, I find that a reduction of the requested award of $89,658.26 by 40% is appropriate.

Accordingly, I respectfully recommend that Plaintiff be awarded attorneys' fees in the amount of $53,794.96.

***B. Costs***

Plaintiff submitted a Bill of Costs, identifying a filing fee of $405, a service fee of $484.24, and a docket fee of $20. (*See* Dkt. 39-8.)

Local Civil Rule 54.1(a) states that "[w]ithin 30 days *after* the entry of final judgment . . . unless this period is extended by the court for good cause shown, any party seeking to recover costs must file with the clerk a notice of taxation of costs by ECF . . . indicating the date and time of taxation which must comply with the notice period prescribed by Fed. R. Civ. P. 54, and annexing a bill of costs." (emphasis added).

While "[f]ee awards typically include those reasonable out-of-pocket costs incurred by the attorney, including for items such as shipping, filing fees, process servers, and litigation support," *Jericho Plaza*, 2026 WL 476134, at *5 (internal citations omitted), Plaintiff has submitted the request as a Bill of Costs. The Clerk has not entered final judgment, so filing the Bill of Costs is premature.

I respectfully recommend that Plaintiff's request for costs as stated on the Bill of Costs be denied at this time, and that Plaintiff be permitted to re-submit the Bill of Costs to the Clerk after entry of final judgment.

***C. Anticipated Fees and Costs***

Plaintiff requests that it be awarded attorney's fees for "additional time charges have been and will be incurred from November 1, 2025, through and including the closing of title of the referee's sale in an amount of at least $7,500.00 which includes estimated fees incurred in connection with this

motion, the referee's sale and closing, together with further disbursements (excluding advertising fees for the notice of the foreclosure sale) in the amount of approximately $500.00." (*See* Decl. of Regularity ¶ 40.)

Although Plaintiff asserts that "[t]hese anticipated fees and disbursements are reasonable for this type of action" (*id.*), it provides no support for actual amounts of fees or disbursements. I do not find that awarding estimated amounts for legal work that has not yet been done or expenses that have not yet been incurred to be appropriate on this application.

Accordingly, I respectfully recommend that Plaintiff not be awarded $7,500 for anticipated legal work or $500 for future disbursements at this time, but that Plaintiff be granted leave to submit an additional application for attorneys' fees and disbursements after they have been incurred.

**III. Post-Judgment Interest**

Post-judgment interest is mandatory in civil actions, and such "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a); *see also Jericho Plaza Portfolio LLC*, 2026 WL 476134, at *14.

Accordingly, I respectfully recommend that the Court approve post-judgment interest, which is calculated based on the weekly average one-year constant maturity Treasury yield for the week preceding the date on which judgment is entered. *See* 28 U.S.C. § 1961(a); *Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008) (holding that an award of post-judgment interest is "mandatory" and "governed by federal statute").

**CONCLUSION**

For the foregoing reasons, I respectfully recommend that: (1) the Referee's Report be confirmed in the total amount of $3,344,200, with an additional *per diem* interest amount of $1,533.33

from May 31, 2025 to the date of entry of judgment, (2) an award $53,794.96 in attorneys' fees be awarded, (3) post-judgment interest be awarded, and (4) the annexed Order be entered.

Any objection to this Report and Recommendation must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any such objection waives the right to appeal the District Court's Order. *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York
August 11, 2026